Argued and submitted February 22, affirmed May 22, 1985

In the Matter of the Compensation of
Terri E. Becker, Claimant.

## E. W. ELDRIDGE, INC. et al,
*Petitioners,*

*v.*

## BECKER,
*Respondent.*

(81-08634, 81-08635; CA A32179 (Control))

In the Matter of the Compensation of
Robert E. Becker, Claimant.

## E. W. ELDRIDGE, INC. et al,
*Petitioners,*

*v.*

## BECKER,
*Respondent.*

(81-08636, 81-08637; CA A32180)
(Cases Consolidated)

700 P2d 301

R. Kenney Roberts, Portland, argued the cause for petitioners. On the brief were Jerald P. Keene and Roberts, Reinisch & Klor, Portland.

Alan M. Scott, Portland, argued the cause for respondents. With him on the brief were Jill Backes and Galton, Popick & Scott, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners, E. W. Eldridge, Inc. (Eldridge), and EBI Companies (EBI), seek judicial review of an order of the Workers' Compensation Board (Board) affirming two opinions of a referee which had held them responsible for separate claims submitted by respondents Terri Becker and Robert Becker for injuries received while in the employ of a subcontractor performing work for Eldridge. The subcontractor's compensation coverage had lapsed. We affirm.

Claimants were employed as dump truck drivers by D & F Trucking (D & F), a corporation engaged in general subcontract work. In November, 1980, Eldridge let a contract to D & F under which D & F was to deliver and unload quarry materials for Eldridge at a job site in Kelso, Washington. At the time the parties entered the contract, D & F had workers' compensation insurance for its employes through SAIF, but that insurance apparently lapsed on December 31, 1980. D & F obtained workers' compensation coverage in Washington.

On March 31, 1981, claimants both suffered compensable injuries[1] arising from the same incident at the Kelso job site. Separate claims were filed with SAIF, EBI and the State of Washington. Each of the claimants' three claims was subsequently denied, and claimants requested a hearing on their Oregon claims.

After the hearing, the referee concluded, in separate orders, that the claims were governed by Oregon Workers' Compensation Law and that claimants were subject workers of Eldridge under Oregon's statutory employer law. ORS 656.029; *see EBI Companies v. Erzen,* 73 Or App 256, 698 P2d 534 (1985). *Cf. former* ORS 656.124 (*repealed by* Or Laws 1965, ch 285, § 95). As a result, Eldridge was held responsible for the payment of all workers' compensation benefits to claimants through its insurer, EBI. The Board affirmed.

Petitioners first assign as error the Board's interpretation of ORS 656.029 as imposing on an "employer who lets a contract" (*i.e.,* a prime contractor) the responsibility of monitoring "the person to whom the contract was let" (*i.e.,* a

---

[1] Compensability is not at issue in this appeal.

subcontractor)[2] for the purpose of assuring that the latter maintains workers' compensation insurance coverage for its employes. A result of the Board's interpretation is that an *uninsured* subcontractor's employe injured on the job is a "subject worker" of the prime contractor for the purposes of workers' compensation and, thus, is entitled to benefits through the prime contractor's insurer.

The version of ORS 656.029 (*amended by* Or Laws 1981, ch 725, § 1; Or Laws 1981, ch 854, § 4; Or Laws 1983, ch 397, § 1; and Or Laws 1983, ch 579, § 2a) in effect at the time claimants' injuries occurred provided:

"(1)   If any person engaged in a business and subject to this chapter as an employer lets a contract involving the performance of labor and such labor is performed by the person to whom the contract was let, with assistance of others, all persons engaged in the performance of the contract are deemed subject workers of the person letting the contract unless the person to whom the contract is let has qualified either:

"(a)   As a direct responsibility employer as provided pursuant to ORS 656.407; or

"(b)   As a contributing employer as provided by ORS 656.411.

"(2)   If the person to whom the contract is let performs the work without the assistance of others, that person is subject to this chapter as a subject worker of the person letting the contract unless that person and the person letting the contract jointly file with the insurer or self-insured employer a declaration stating that the services rendered under the contract are rendered as those of an independent contractor."

It is clear from a reading of the statute that a prime contractor is to be responsible for persons deemed "subject workers" under the provisions of the Workers' Compensation Laws. It is equally clear, however, that the prime contractor may avoid responsibility if certain conditions are met. *See EBI Companies v. Erzen, supra.*

---

[2] These designations are only for the sake of clarity and convenience. We do not purport by this opinion to limit the scope of the statute solely to prime contractor-subcontractor relationships; the issue of whether the statute applies to subcontractor-subsubcontractor relationships is not before us.

Subsection (1), applicable here, removes responsibility from the prime contractor if the subcontractor qualifies as either a "direct responsibility employer" or a "contributing employer." As the former, the employer is self-insured and warrants that it will be personally responsible for compensation benefits. *See* ORS 656.407 (*amended by* Or Laws 1981, ch 854, § 27). As the latter, an employer furnishes workers' compensation coverage through an insurance carrier. *See former* ORS 656.411 (*repealed by* Or Laws 1981, ch 854, § 1). At the time it subcontracted with Eldridge, D & F qualified as a contributing employer under ORS 656.029.

Petitioners argue that the language of the statute, "has qualified," imposes responsibility on the prime contractor to verify a subcontractor's insurance coverage only at the time a contract is let and that the prime contractor is thus relieved from responsibility if an injury occurs at some later date when the subcontractor has become uninsured. They argue that there is no duty to monitor subcontractors to see that insurance is maintained and that to impose such a duty would be an unfair burden. However, the legislative history of ORS 656.029 and the policy of the Workers' Compensation Law do not support petitioners' claims.

The impetus behind the introduction and passage of ORS 656.029 was the desire to eliminate "phony partnerships" and other business entities organized to evade responsibility under the Workers' Compensation Law. Minutes, Senate Committee on Labor, Consumer and Business Affairs, p 7 (Feb. 27, 1979 — Statement of Senator Kulongoski). Legislators recognized the seriousness of the problem and strove to correct it by enacting legislation which would encourage employers either to obtain insurance on their own, demand proof of insurance coverage from subcontractors or negotiate a waiver of responsibility through the filing of a declaration of independent contractor status. Minutes, Senate Committee on Labor, Consumer and Business Affairs, pp 4-7 (Feb. 27, 1979). Because the primary goal of all workers' compensation legislation is the protection of employes, we agree with the Board that imposing liability on the party best able to shoulder the burden both financially and logistically, *i.e.,* the prime contractor, achieves this goal and furthers the intent of the legislature. We hold, therefore, that ORS 656.029

is to be applied in the light of the circumstances at the time a worker is injured, rather than the time the contract was let.

Petitioners argue that the imposition of a monitoring function on contractors will encourage unscrupulous or careless subcontractors either to cancel their insurance coverage after entering the contract or to let their coverage lapse. We believe, as did the Board, that the referee identified an answer to this objection which may be currently in practice or which at least deals with petitioners' concerns: The prime contractor need only obtain from the subcontractors it does business with, proof of coverage *and* assurance that such coverage will be maintained until the contract is performed. The prime contractor is in the best position to require compliance with its demands, as it controls the selection of its subcontractors.[3] This position receives support from one noted commentator:

> "The purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." 1C Larson, *Workmen's Compensation Law* 9-12, § 49.11 (1980 ed.).

The parties did not cite, but our research has disclosed, another section of the Workers' Compensation Law which, we believe, reflects the legislative policy that the prime contractor be ultimately liable for workers' compensation coverage. At the time of claimants' injury, ORS 656.556 (*amended by* Or Laws 1981, ch 854, § 38) provided:

> "If any person lets a contract and the person to whom the contract was let, while performing the contract, engages as an employer subject to ORS 656.001 to 656.794 at the plant of the person letting the contract, upon premises owned, leased or controlled by such person *or upon premises where such person is conducting his business, the person letting the contract shall be liable to the Industrial Accident Fund for the payment of all contributions which may be due such fund on*

---

[3] It would seem that employer-subcontractors normally also would be encouraged to provide coverage to avoid a finding of noncompliance under the Workers' Compensation Law, which would subject them to sanctions, such as a penalty. *See* ORS 656.052, 656.054.

*account of the performance of the contract or any subcontract thereunder.*" (Emphasis supplied.)

■      The statute plainly made a prime contractor responsible for the payment of a subcontractor's "contributions" due the Industrial Accident Fund if certain circumstances existed. Pursuant to ORS 656.504-.505 and 656.508 (*amended by* Or Laws 1981, ch 854, §§ 33, 34 and 35), "contributions" consisted of the monthly payment or premium for workers' compensation insurance coverage. *See also* Skelton, *The 1965 Oregon Workmens' Compensation Law: A New Model for the States,* 45 Or L Rev 40, 51 (1965). The legislature's obvious intention to make the prime contractor liable for a subcontractor's monthly payments clearly reinforces the conclusion of the Board that the prime contractor should be ultimately responsible for a workers' insurance coverage in the event the subcontractor is uninsured at the time of the injury, and we so hold.

■      Petitioners next assign as error the Board's determination that the contract between Eldridge and D & F was for "labor" rather than for the delivery of "materials." Petitioners argue that the contract entered into between the parties in this case involved a "materials" contract and that ORS 656.029 is therefore inapplicable, because it only operates where a contract is let "involving the performance of labor." We agree with the Board that petitioners' characterization of the contract must be rejected, because the terms and nature of the contract clearly involved "the performance of labor."

Affirmed.